## GEORGE McKINLEY GRACE v. THE STATE.

No. 5870.    Decided December 16, 1920.

1.—Rape—Death Penalty—Evidence—Bloody Clothes.

Where, upon trial of rape and a conviction of that offense, inflicting the death penalty, defendant pleaded an alibi, and there was evidence by the State, uncontroverted, that the hand of prosecutrix was cut by a knife by her assailant, and that she bled profusely on the bed clothes and on her night gown, etc., it was reversible error to permit the introduction of the bloody clothing, pillow-case, night gown, etc., as it could serve to illustrate no fact connected with the transaction. Following Christian v. State, 46 Texas Crim. Rep., 50, and other cases.

2.—Same—Bloody Clothes—Evidence—Rule Stated.

It has been held, where bloody clothes illustrate some question in the case, or tends to solve it, such testimony is admissible; but, where it does not tend to solve an issue in the case, it would not be admissible. Following Cole v. State, 45 Texas Crim. Rep., 225, and other cases.

3.—Same—Case Stated—Reversible Error—Race-Prejudice.

The exhibition of these bloody clothes in a trial of rape by a negro upon a white woman, doubtless did have a prejudicial effect against him, and the same is reversible error.

4.—Same—Rehearing—Stating Facts in Opinion.

Where, upon motion for rehearing by the State, complaining of an incorrect statement of facts in the opinion, as not found in the record, it was found that while the language in the opinion did not quote exactly that of the witnesses, but was substantially correct, such criticism is without merit, and there is no reversible error.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of rape by force; penalty, death.

*W. C. Linden,* for appellant.—On question of introducing bloody clothes in evidence: Bibb v. State, 205 S. W. Rep., 135; White v. State, 202 id., 737, and cases cited in opinion.

On question of identification: Willard v. State, 27 Texas Crim. App., 386; Attaway v. State, 35 Texas Crim. Rep., 403; Murphy v. State, 43 id., 515.

*Alvin M. Owsley,* Assistant Attorney General, *D. A. McAskill,* and *W. S. Anthony,* Assistant District Attorney, for the State.

DAVIDSON, PRESIDING JUDGE.—The death penalty was inflicted upon appellant by the jury under a charge of rape.

Mrs. Howard, the assaulted female, testified upon the trial that she recognized appellant as the assaulting party at her house; that the room was dark when he entered, that he woke her by placing his hand on her, that she turned on the light and that he instantly broke it, showing that the recognition was by the momentary flash of the light. It is also claimed that she got a view of him as he went out of the door. There is evidence of parties who talked with prosecutrix the morning after the rape occurred at night showing that she stated she did not know whether her assailant was a white man or a negro There is evidence not controverted that her hand was cut by a knife. She says this knife was in the hands of her assailant who threatened to kill her if she did not submit to his desires, and in the scuffle her hand was cut. It bled profusely on the bed clothes and on her night gown. Appellant offered evidence to establish an alibi which, if believed by the jury, should have entitled him to an acquittal. There is also a confession introduced having been made to the officers on the day subsequent to the alleged rape. This confession does not come in the best shape, but it is not the purpose here to discuss it. It is fully questionable, if not more than questionable, that this confession was admissible as presented by the bill of exceptions.

There is a bill of exceptions which shows that the bloody clothing were introduced in evidence, the pillow case, sheet, night gown and bed clothes. These clothing were quite bloody. The bill of exceptions is full and sets out all the circumstances, and questions and answers of witnesses and objection of appellant. We are of opinion this testimony was not admissible. It could serve to illustrate no fact connected with the transaction. There is no issue as to the fact that Mrs. Howard had her hand cut and that it bled profusely on the clothing that were admitted in evidence. Appellant did not question that fact but denied his presence. She testified fully and clearly as to the wound and what produced the shedding of blood. Other witnesses testified to the fact that her hand was cut and there was blood on her gown as well as on the bed clothing. The introduction of this evidence could not solve any question before the jury. Its effect was to inflame their minds, and was necessarily prejudicial. It has been held where bloody

clothing illustrate some question in the case or tend to solve it, such evidence is introducible, but where it does not tend to solve any issue in the case it would not be admissible. These lines of distinction are well marked and well known. In support of the proposition that the clothing were not admissible see Cole v. State, 45 Texas Crim. Rep., 225; Christian v. State, 46 Texas Crim. Rep., 50; Melton v. State, 47 Texas Crim. Rep., 455; Crenshaw v. State, 48 Texas Crim. Rep., 80; Lucas v. State, 50 Texas Crim. Rep., 220; Williams v. State, 61 Texas Crim. Rep., 356; Lacoume v. State, 65 Texas Crim. Rep., 146; Corley v. State, 69 Texas Crim. Rep., 626; Gillespie v. State, 80 Texas Crim. Rep., 432; Huey v. State, 81 Texas Crim. Rep., 557; White v. State 83 Texas Crim. Rep., 255. This negro received at the hands of the jury the death penalty. What effect these bloody clothing may have had upon the minds of the jury, to say the least of it, was not beneficial to his case in the minds of the jury. The exhibition of those bloody clothing may have had and doubtless did have a prejudicial effect against defendant. This was a case of rape by a negro upon a white woman, and it is well known as current history the prejudices that are engendered among our race of people against this character of case, especially when the accused is a negro and the woman is white. This may have induced the jury to assess the extreme penalty, especially in view of such facts as have been already stated.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

December 16, 1920.

DAVIDSON, PRESIDING JUDGE.—There is but one question that is thought necessary to be noticed in the State's motion for rehearing filed by the prosecution in the trial court. This refers to what the motion says in an incorrect statement of a fact not found in the record. The language of the motion is as follows: "We have diligently searched the record to find such testimony and we cannot find it," etc. The matter referred to in the motion is thus stated, substantially, that the court was in error in stating "There is evidence of parties who talked with prosecutrix the morning after the rape occurred at night showing that she stated she did not know whether her assailant was a white man or a negro." That statement from the opinion is substantially correct. The opinion is attacked, on that statement. The court correctly stated the matter in the opinion. On page 37 of the record, in the testimony of the witness Carver, set out in bills of exception Nos. 1 and 5 which were approved by the court, this language is found:

"I seen two niggers talking there to her, and after I had got out there I learned there had been a prowler, or some one in the yard, but I didn't know it at the time. Then I stopped and talked to her, but she did not tell me that the man she saw was a white man, she said she didn't know, that it was dark and she didn't know him; that he was a tall fellow, rather stoop shouldered. I did not tell her, 'we think it is this same man here, and you must not say he was a white man, I have almost gotten a confession out of that nigger.' I told her, 'You must be positive.' "

On page 65, in another bill of exceptions approved by the court, practically the same language is found as that quoted above. The witness further says: "I told her she must be positive whether he was or was not the nigger. The fact she was talking to two niggers, that is the reason why I stopped, I thought I would stop and ask her and see if she had any information about who those two niggers were." It is unnecessary to discuss this matter with the record in this shape. The language in the opinion did not quote exactly that of the witnesses, but it is substantially correct. She stated she did not know who it was that assaulted her, whether it was a white man or not. She was being queried about it in the presence of these two negroes for the reason stated by the witness. We are of opinion that the criticism is without merit. The statement in the opinion is in accord with transcript as approved by the trial judge. The other matters we deem unnecessary to discuss.

The motion for rehearing is overruled.

*Overruled.*